**ROBERT MANN**, CSB 48293
**DONALD W. COOK**, 116666
ATTORNEYS AT LAW
3435 Wilshire Blvd., Ste. 2900
Los Angeles, CA 90010
(213) 252-9444
(213) 252-0091 facsimile
email: manncook@earthlink.net

Ellen Hammill Ellison, CSB 141429
**LAW OFFICE OF ELLEN HAMMILL ELLISON**
3435 Wilshire Blvd., Ste. 2900
Los Angeles, CA 90010
(213) 365-8225
(213) 386-4584 facsimile
email: ellenellison1116@yahoo.com

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH HOOPER, an individual,<br><br>             Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN DIEGO; SAN DIEGO COUNTY SHERIFF'S DEPARTMENT; SHERIFF WILLIAM B. KOLENDER, in his official and individual capacities; DEPUTY SHERIFF KIRK TERRELL, in his official and individual capacities; and DOES 1 through 10,<br><br>             Defendants. | Case No. 07 CV 1647 JAH (CAB)<br><br>**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; DECLARATION OF DONALD W. COOK**<br><br>Date: 8/29/11<br>Time: 2:30 p.m.<br>Ctrm: 11(2nd floor) |

1
2

# TABLE OF CONTENTS

Page

3

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.      Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     Standards for Municipal Liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    Defendants Admit That The Dog Attack On Ms. Hooper Was Pursuant to
        Defendants' Custom, Policy and/or Practice. . . . . . . . . . . . . . . . . . . . . . . . 3

IV.     Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

00071389.WPD

# TABLE OF AUTHORITIES

Page(s)

***Cases***

*Chew v. Gates*,
 27 F.3d 1432 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 6

*City of Canton v. Harris*,
 489 U.S. 378 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*City of Los Angeles v. Heller*,
 475 U.S. 796 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Clipper v. Takoma Park Maryland*,
 876 F.2d 17 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Garner v. Memphis Police Dept.*,
 8 F.3d 358 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hunter v. County of Sacramento*,
 ___ F.3d ___ (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Jackson v. Gates*,
 975 F.2d 648 (9th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

*Lalonde v. County of Riverside*,
 204 F.3d 947 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Larez v. City of Los Angeles*,
 946 F.2d 630 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Lee v. City of Los Angeles*,
 250 F.3d 668 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

*Monell v. New York Dept. Of Soc. Servs.*,
 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Oviatt v. Pearce*,
 954 F.2d 1470 (9th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Radobenko v. Automated Equipment Corp.*,
 520 F.2d 540 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Streit v. County of Los Angeles*,
 236 F.3d 552 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Watkins v. City of Oakland*,
 145 F.3d 1087 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1

***Statutes/Rules of Court***

2

3

Federal Rules of Civil Procedure 30(b)(6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Federal Rules of Evidence 801(d)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Title 42, United States Code § 1983  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00071389.WPD

## I.      Overview.

The two entity defendants, the County of San Diego ("County") and its Sheriff's Department ("SDSD") (properly sued as a separate entity[1]) seek summary judgment on Ms. Hooper's 42 U.S.C. § 1983 *Monell* claims. Defendants' motion rests entirely on their claim of an absence of evidence of a municipal custom, policy or practice; defendants do *not* argue the absence of a constitutional violation. Hence, defendants' motion presents the opposite of a situation like that in *City of Los Angeles v. Heller*, 475 U.S. 796 (1986). There, the case against the municipal defendants failed because Plaintiff could not prove a constitutional violation thus making the claim of municipal liability moot. 475 U.S. at 799.

As defendants do not claim the absence of a constitutional violation this opposition presents the evidence establishing that the dog attack on Ms. Hooper was pursuant to County and SDSD policy. The evidence consists of (a) defense admissions by their designated agent that the force used against Ms. Hooper was per department policy and (b) defendant Terrill's testimony to the same effect. Each suffices to hold both defendants liable.

## II.     Standards for Municipal Liability.

There are three different routes for establishing a public entity's § 1983 liability:

1. "A local government entity is liable under § 1983 when 'action pursuant to official municipal policy of some nature cause[s] a constitutional tort.' " *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (*quoting Oviatt v. Pearce*, 954 F.2d 1470, 1473-74 (9th Cir.1992) and citing *Monell v. New York Dept. Of Soc. Servs.*, 436 U.S. 658 (1978)). Under this theory the "policy 'need only cause (the) constitutional violation; it

---

[1] Ninth Circuit precedent holds that a California Sheriff's Department is subject to suit as a separate public entity. *Streit v. County of Los Angeles*, 236 F.3d 552, 565-66 (9th Cir. 2001).

00071389.WPD

need not be unconstitutional per se.' " *Chew v. Gates*, 27 F.3d 1432, 1444 & n.12 (9th Cir. 1994) (*quoting Jackson v. Gates*, 975 F.2d 648, 654 (9th Cir.1992)); OR

2. "A local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.' " *Lee*, *supra* (*quoting Oviatt*, 954 F.2d at 1474). This is the *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) failure to train theory. 250 F.3d at 681. The *Canton* failure-to-train is a separate theory from a straight up *Monell* claim; *Canton* requires a showing a deliberate indifference whereas *Monell* does not. *Chew*, 27 F.3d at 1445 (explaining that even if the plaintiff fails to show that the constitutional violation was "officially sanctioned" by municipal policy, plaintiff could still prevail under a *Canton* "deliberate indifference" failure to train theory); OR

3. A policy maker ratified the unconstitutional conduct. *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991); *accord*, *Watkins v. City of Oakland*, 145 F.3d 1087, 1093-94 (9th Cir. 1998).

In this case defendants are liable under the first theory. Under that theory the law does not require that Plaintiff establish the policy or practice was deliberately indifferent to Ms. Hooper's rights. That "deliberate indifference" formulation is for the second theory of entity liability, that is, a *City of Canton* entity inaction or entity failure to train. Thus, in *Chew*, the Ninth Circuit held that a municipal policy causing a police dog attack subjected the city to *Monell* liability, with the court going on to distinguish that basis of entity liability from one relying on a *Canton* failure to train. 27 F.3d at 1445. It is also worth noting that to prevail on the first theory, the plaintiff is not required to show that "official policy-makers had actual knowledge of the practice at issue" if other evidence establishes that the challenged action was pursuant to municipal policy, custom or practice. *Hunter v. County of Sacramento*, ___ F.3d ___ (9th Cir. 2011) (filed 7/26/11), Slip Opinion at 9596 n.9.

**III.    Defendants Admit That The Dog Attack On Ms. Hooper Was Pursuant to Defendants' Custom, Policy and/or Practice.**

Pursuant to F.R.Cv.P. 30(b)(6), the County and SDSD produced Deputy Edwin Brock to testify on the following subject:

24. Whether the use of the dog against plaintiff in the incident that gives rise to this lawsuit was in accordance with and pursuant to the custom, policy and/or practice of the San Diego County Sheriff's Department.

See **Exhibit A**, copy of deposition notice (¶24); Brock depo., 34:15-23 (**Exhibit B**).

Brock testified:

Q: You're saying now that you are able -- the last part of your answer is that you are able to say that the force that he used against Miss Hooper was in accordance with San Diego Sheriff's Department policy and training, at least as it exists as of now; is that true?

A: That's my opinion.

Q: You're also here to testify as a designated agent for the sheriff's department, Paragraph 24; isn't that correct?

Your counsel indicated earlier -- perhaps you need to look at Paragraph 24 and maybe confer with her.

A: I did read 24.  She said either myself -- I may be able to answer, but it was more appropriate for Corporal Cross.

Q: Are you able to testify as to Paragraph 24?

A: Yes.

Brock depo., 53:4-20 (**Exhibit B**).

Hence, via the testimony of their F.R.Cv.P. 30(b)(6) agent Brock, defendants *admit* that the force Terrill used against Ms. Hooper was in accordance with defendants' policy and/or practice.

00071389.WPD

Brock's testimony binds defendants as an admission; Brock's testimony may not now be disavowed. F.R.E. 801(d)(2)(C) (admission by party-opponent); F.R.Cv.Proc. 30(b)(6) (corporate party's designee who testifies at deposition binds the corporate party); *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) (party may not create factual conflict by contradicting his earlier deposition testimony).

Defendants are in the same position as defendant City of Los Angeles in *Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994). There, "[i]n the district court, the city conceded, for purposes of summary judgment, the truth of [plaintiff's] contention that departmental policy authorized" the police dog attack. The Ninth Circuit held that the city was "bound by the concession it made in the district court" and thus liable under § 1983. 27 F.3d at 1444-45 (Majority Opinion), 1456-57 (Norris, J., concurring).

Aside from the binding nature of Brock's admission, his testimony was echoed by the dog handler, defendant Terrill. Terrill testified that in ordering the dog to attack he was following department policy and his training, and that he was never told anything different by any of his superiors:

Q: And did you tell Dan Settle what had occurred?

A: Yes.

Q: What was his rank?

A: He's a deputy.

Q: Does he have supervisory responsibilities?  I mean, K-9 coordinator sounds like someone who might just be coordinating activities.  That's why I ask.

A: Yeah, he has some supervisory responsibilities.

Q: He has supervisory responsibilities over you; is that true?

A: Yes.

Q: What are those supervisory responsibilities over you?

A: He was responsible for training.

Q: Did he indicate -- well, withdrawn.

You basically told him in so many words what your dog had done, right, how your dog came to bite Ms. Hooper; is that right?

A: I wrote a report for him.

Q: Well, had you written a report at the time that you met with him at the hospital?

A: Yeah.  It was -- it was a contact report, I believe, that I gave to him.

Q: Did he indicate to you in any manner that the dog's behavior was not in accordance with the dog's training?

A: No, not at all.

Q: His reaction to you is that, well, yeah, the dog pretty much performed the way that he would have expected the dog to have performed; is that true?

A: Well, he's pretty even-keeled.  I mean...

Q: Okay.  I mean, he gave you no indication that the dog had acted outside of its training.  Would you agree with that statement, Deputy?

A: I would agree with that statement.

Terrill depo., 184:13-185:23 (**Exhibit C**).

\*     \*     \*     \*

Q: Your use of force in this incident, including the use of the dog when it bit Ms. Hooper, was in accordance with your training; is that true?

A: Yes.

Q: And your use of force, including the dog biting Ms. Hooper, was in accordance with sheriff's department policy and procedure as you understand it; is that correct, Deputy?

A: Yes.

-5-                                           00071389.WPD

Q: Is it also true that you heard nothing, seen nothing from anybody within the department in the almost three years since this incident happened suggesting that your use of force in this incident, including the use of the dog, was contrary to sheriff's department policy?

You've heard or seen nothing from the department to that effect; would you agree?

A: I've heard or seen nothing about this incident, no.

Terrill depo., 212:13-213:5 (**Exhibit C**).

Terrill's testimony alone suffices to hold defendants liable. In *Lalonde v. County of Riverside*, 204 F.3d 947, 961-62 (9th Cir. 2000), the trial court excluded testimony by the defendant deputy that his actions were "in accordance with policy," and then dismissed the claim against the county for a failure of proof. The Ninth Circuit reversed, holding that the officer's testimony was sufficient for imposing *Monell* liability. *See also Clipper v. Takoma Park Maryland*, 876 F.2d 17, 20 (4th Cir. 1989) (*Monell* liability evidence sufficient because arresting officer in response to the question, "Whatever you did at that particular time, you felt you were doing pursuant to instructions given you by the Takoma Park Police Department?' stated "I felt I was doing what I thought was right and what I learned in school."); *Garner v. Memphis Police Dept.*, 8 F.3d 358, 363-64 (6th Cir. 1993) (since city authorized use of unreasonable force, city is liable).

Again, there is no requirement that Plaintiff show that defendants' policy that caused her injury is unconstitutional. *Chew*, 27 F.3d at 1442 ("City policy 'need only cause (the) constitutional violation; it need not be unconstitutional per se.' " (*quoting Jackson v. Gates*, 975 F.2d 648, 654 (9th Cir.1992)).

**IV.    Conclusion.**

Defendants offer nothing showing that the dog attack on Ms. Hooper was *not* in accordance with their policy or practice. Meanwhile, defendants (through their designated agent and employees) admit that the dog attack and Terrill's use of force was pursuant

-6-

1  to defendants' policies. Defendants' motion must therefore be denied.

2  DATED: August 15, 2011

3                          **ROBERT MANN**
                           **DONALD W. COOK**
4                          Attorneys for Plaintiff

5

6      By_____

7                          Donald W. Cook

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00071389.WPD

# DECLARATION OF DONALD W. COOK

I, DONALD W. COOK, declare:

1. I am one of the attorneys representing plaintiff.

2. I represented Deborah Hooper at the March 19, 2009 deposition of defendants' designated Rule 30(b)(6) agent Edwin Brock. Deputy Brock testified in response to a Rule 30(b)(6) notice I served. Attached hereto as **Exhibit A** is a true copy of the deposition notice, and attached hereto as **Exhibit B** are true copies of relevant pages from Deputy Brock's deposition transcript.

3. On behalf of plaintiff, I took defendant Kirk Terrill deposition on March 5, 2009. True and correct copies of the cited portions of his deposition testimony are attached hereto as **Exhibit C**.

I declare under penalty of perjury that the foregoing is true and correct. Executed August 15, 2011, at Los Angeles, California.

_____
Donald W. Cook

1  **ROBERT MANN**, CSB 48293          **ELLEN   HAMMILL   ELLISON**,
   **DONALD W. COOK**, 116666          CSB 141429
2  ATTORNEYS AT LAW                    **LAW   OFFICE   OF   ELLEN**
   3435 Wilshire Blvd., Ste. 2900      **HAMMILL ELLISON**
3  Los Angeles, CA 90010               3435 Wilshire Blvd., Ste. 2900
   (213) 252-9444                      Los Angeles, CA 90010
4  (213) 252-0091 facsimile            (213) 365-8225
   email: manncook@earthlink.net       (213) 386-4584 facsimile
5                                      email: ellenellison1116@yahoo.com

6  Attorneys for Plaintiff

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 DEBORAH HOOPER, an individual,        Case No. CV 07-1647 JAH
                                         (CAB)
12              Plaintiff,
                                         **PLAINTIFF'S NOTICE OF**
13 vs.                                   **DEPOSITIONS**

14                                       Date: 1/30/09 (Terrell)
   COUNTY OF SAN DIEGO; SAN DIEGO        Date: 2/2/09 (PMK)
15 COUNTY SHERIFF'S DEPARTMENT;          Date: 2/3/09 (Kolender)
   SHERIFF WILLIAM B. KOLENDER, in
16 his official and individual capacities;
   DEPUTY SHERIFF KIRK TERRELL, in
17 his official and individual capacities; and
   DOES 1 through 10,
18
19              Defendants.

20

21      TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

22      PLEASE TAKE NOTICE that on Friday, January 30, 2009, at 11:00 a.m., plaintiff

23 will take the deposition of defendant Kirk Terrell.

24      PLEASE TAKE FURTHER NOTICE that on Monday, February 2, 2009, at 11:00

25 a.m., pursuant to F.R.Cv.Proc. 30(b)(6) plaintiff will take the deposition of the designated

26 agent(s) for the County of San Diego and San Diego County Sheriff's Department on the

27 following matters:

28

**Depo notice**                    -9-                    **EXHIBIT A**

1. From 1995 to present, the method of record keeping by San Diego County Sheriff's Department of bites of suspects by San Diego County Sheriff's Department canines;

2. From 1995 to present, the method of record keeping by San Diego County Sheriff's Department of bites of non-suspects by San Diego County Sheriff's Department canines;

3. From 1995 to present, the types of records maintained and/or created by San Diego County Sheriff's Department in which instances of bites of suspects by San Diego County Sheriff's Department canines are recorded;

4. From 1995 to present, the types of records maintained and/or created by San Diego County Sheriff's Department in which instances of bites of non-suspects by San Diego County Sheriff's Department canines are recorded;

5. From 1995 to present, the types of records maintained and/or created by San Diego County Sheriff's Department for recording apprehensions of suspects through the assistance of San Diego County Sheriff's Department canines;

6. From 1995 to present, the types of records maintained and/or created by San Diego County Sheriff's Department for purposes of calculating the bite rates of individual San Diego County Sheriff's Department canine units;

7. From 1995 to present, the types of records maintained and/or created by San Diego County Sheriff's Department for purposes of calculating the bite rate of San Diego County Sheriff's Department's Canine Unit;

8. From 1995 to present, the types of records maintained and/or created by San Diego County Sheriff's Department canine handlers for purposes of recording their activities as San Diego County Sheriff's Department canine handlers;

9. From 1995 to present, the types of records maintained and/or created by San Diego County Sheriff's Department Canine Handlers for purposes of recording

**Depo notice**

-10-

**EXHIBIT A**

00039575.WPD

their activities in apprehending suspects;

10. From 1995 to present, the types of records maintained and/or created by San Diego County Sheriff's Department Canine Handlers for purposes of recording their activities in training or conditioning their Police Department canines;

11. From 1995 to present, the types of records maintained and/or created by San Diego County Sheriff's Department Canine Handlers for purposes of recording instances where their canines bite suspects;

12. From 1995 to present, the types of records maintained and/or created by San Diego County Sheriff's Department Canine Handlers for purposes of recording instances where their canines bite non-suspects;

13. From 1995 to present, the types of records maintained and/or created by San Diego County Sheriff's Department, or San Diego County Sheriff's Department canine handlers for the purpose of recording the degree or severity of injuries inflicted by San Diego County Sheriff's Department canines;

14. From 1995 to present, the types of records maintained and/or created by San Diego County Sheriff's Department, or San Diego County Sheriff's Department canine handlers for the purpose of recording the extent of medical treatment rendered to persons bitten by San Diego County Sheriff's Department canines;

15. From 1995 to present, the types of records maintained and/or created by San Diego County Sheriff's Department for evaluating, monitoring and/or critiquing San Diego County Sheriff's Department canine handlers and/or San Diego County Sheriff's Department canine unit;

16. The collection, storage, retrieval, and archival of information collected for purposes of complying with Cal. Penal Code § 13100 *et set.* This includes but is not limited to information as it is stored on any and computer database(s);

17. The training, if any, provided to San Diego County officers on the

00039575.WPD

circumstances, under accepted police practices and standards for the use of force, when a San Diego County officer may use force against a person where that force creates a substantial risk of serious injury;

18. Whether or not the San Diego County Sheriff's Department policy for the use of force by police officers incorporates POST training standards for the use of force;

19. Whether or not San Diego County officers are trained to used physical force in compliance with POST training standards;

20. Whether or not the San Diego County Sheriff's Department has adopted POST minimum training standards into the Department's training standards for the use of force by police officers;

21. The frequency of physical injury to suspects caused by San Diego County officers in using one or more baton strikes;

22. The frequency of hospitalization of suspects (meaning in-patient care for at least one day) as a result of physical injury to suspects caused by San Diego County officers in using one or more baton strikes; and

23. The frequency with which San Diego County officers resort to physical force (other than the use of dogs to bite) in arresting suspects.

24. Whether the use of the dog against plaintiff in the incident that gives rise to this lawsuit was in accordance with and pursuant to the custom, policy and/or practice of the San Diego County Sheriff's Department.

25. The use and capabilities of any and all computer systems by the County of San Diego and/or San Diego County Sheriff's Department that identifies persons arrested by the San Diego County Sheriff's Department, arrest charges, victims of crimes, and/or crimes reported to the San Diego County Sheriff's Department. This includes, but is not limited to, the use of IBIS ("*I*nmate *B*ooking *I*nformation

*S*ystem").

PLEASE TAKE FURTHER NOTICE that on Tuesday, February 3, 2009, at 11:00 a.m., plaintiff will take the deposition of defendant William B. Kolender.

The place for all depositions shall be the Law Offices of Robert Mann & Donald W. Cook, located at 3435 Wilshire Boulevard, Suite 2900, Los Angeles, California.

Plaintiff gives notice of intent to record the depositions by means of audio/video recording, as well as stenographic recordation.

DATED: January 14, 2009

**ROBERT MANN**
**DONALD W. COOK**
Attorneys for Plaintiff

By_____
Donald W. Cook

**Depo notice**                                       **-13-**                                       **EXHIBIT A**

00039575.WPD

## United States District Court
## For the Southern District of California

| | |
|---|---|
| DEBORAH HOOPER, an individual,<br><br>Plaintiff,<br>vs.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>Defendants.<br>_____ | Certified Copy<br><br>Case No. CV 07-1647 JAH (CAB) |

### DEPOSITION OF
### Edwin Brock

Location:  1600 Pacific Highway, Room 355, San Diego, CA

Date:  Thursday, March 19, 2009.

Reporter:  Judy Runes, Certified Shorthand Reporter, Certificate No. 5874

INSTANT COURT REPORTING, INC.
280 W. Sierra Madre Blvd., Suite 181
Sierra Madre, California 91024
1-800-498-0288

**Brock depo.**                                 **-14-**                                 **EXHIBIT B**

```
 1                    APPEARANCES OF COUNSEL

 2   For the Plaintiff:

 3            Law Offices of Robert Mann and Donald Cook

 4            Donald Cook, Esq.

 5            3435 Wilshire Boulevard, Suite 2900

 6            Los Angeles, California  90010

 7

 8   For the Defendant:

 9            County of San Diego

10            Office of County Counsel

11            Stephanie E. Kish, Esq.

12            Senior Deputy County Counsel

13            1600 Pacific Highway, Room 355

14            San Diego, California  92101-2469

15            (619) 531-6230 p    (619) 531-6005 f

16            stephanie.kish@sdcounty.ca.gov

17

18

19

20

21

22

23

24

25
```

                                                          2

```
 1                    I N D E X

 2   Examination by:                              Page

 3   Mr. Cook....................................    4

 4

 5

 6

 7

 8

 9

10                    EXHIBITS

11   Identification        Description              Page

12   A - Plaintiff's Notice of Depositions           33

13   B - Basic Course Unit Guide                     35

14   C - Los Angeles County Sheriff's Department     43

15       Suspect Action / Deputy Action

16

17

18

19

20

21

22              IDENTIFIED FOR COUNSEL

23              PAGE      LINE

24                   (None.)

25
```

                                                     3

**Brock depo.**                 **-16-**                 **EXHIBIT B**

```
 1                 San Diego, California

 2            Thursday, March 19, 2009 - 10:28 a.m.

 3

 4                      EDWIN BROCK,

 5              having been first duly sworn,

 6            was examined and testified as follows:

 7

 8                    -EXAMINATION-

 9    BY MR. COOK:

10       Q    State your name, please.

11       A    Edwin Brock.

12       Q    By whom are you employed?

13       A    San Diego County Sheriff's Department.

14       Q    How long have you been so employed?

15       A    16 1/2 years.

16       Q    And your current rank?

17       A    I'm a sergeant.

18       Q    Your current assignment?

19       A    K-9 sergeant.

20       Q    Have you ever had your deposition taken

21    before?

22       A    Yes.

23       Q    If you do not understand a question, say so.

24    If you need to take a break, say so.

25            Are you a dog handler?
```

                                                                    4

**Brock depo.**                      **-17-**                    **EXHIBIT B**

1        Q     Can you identify the issues here?  Just read

2   off the numbers of the paragraphs.

3        A     You want me to read this whole thing?

4        Q     Well, no.  Just tell me -- if you need the

5   assistance of your counsel, that's fine -- you know,

6   what paragraphs by number.  I'm here to testify about

7   Paragraph 1, for example, or Paragraph 7.  Whatever.

8        A     It looks like Numbers 1 through 15.

9        Q     Okay.  What about Paragraph 17?

10            MS. KISH:  No, that will be Corporal Cross.

11   And I have dates to discuss with you later.

12            MR. COOK:  Okay.  All right.

13            MS. KISH:  It is Corporal Cross?

14            THE WITNESS:  That's right.

15            MR. COOK:  All right.  So Sergeant Brock is

16   here just for Paragraphs 1 through 15; is that right?

17            MS. KISH:  Correct.  Let me take another...

18            MR. COOK:  Yeah, maybe you want to take a look

19   at the other just for...

20            MS. KISH:  Sergeant Brock or Corporal Cross

21   can address 24.  I believe Corporal Cross is probably

22   the better candidate.  But...

23            MR. COOK:  All right.

24   BY MR. COOK:

25        Q     So, gosh, do you have a POST certificate?

                                                        34

**Brock depo.**                    **-18-**                    **EXHIBIT B**

1    against Miss Hooper appears to be appropriate based on

2    the resistance she was offering.

3    BY MR. COOK:

4        Q    You're saying now that you are able -- the

5    last part of your answer is that you are able to say

6    that the force that he used against Miss Hooper was in

7    accordance with San Diego Sheriff's Department policy

8    and training, at least as it exists as of now; is that

9    true?

10       A    That's my opinion.

11       Q    You're also here to testify as a designated

12   agent for the sheriff's department, Paragraph 24; isn't

13   that correct?

14            Your counsel indicated earlier -- perhaps you

15   need to look at Paragraph 24 and maybe confer with her.

16       A    I did read 24.  She said either myself -- I

17   may be able to answer, but it was more appropriate for

18   Corporal Cross.

19       Q    Are you able to testify as to Paragraph 24?

20       A    Yes.

21       Q    All right.  Was Deputy Terrell justified in

22   using deadly force against Miss Hooper?

23       A    Deputy Terrell --

24            MS. KISH:  Objection.  Lacks foundation.

25   Assumes facts not in evidence.  Calls for speculation.

                                                        53

**Brock depo.**                **-19-**                **EXHIBIT B**

REPORTER'S CERTIFICATION

I, Judy Runes, RPR, CSR No. 5874, certify:

That the foregoing transcript was taken before me at the time and place therein set forth, at which time the witness was placed under oath by me;

That the testimony and all objections made at the time of the deposition were recorded stenographically by me and thereafter transcribed;

That the foregoing transcript is a true record of the testimony and of all objections made at the time of the deposition;

That dismantling this transcript will void the court reporter's official certification of this transcript.

I further certify that I am neither counsel for nor related to any party to said action, nor in any way interested in the outcome thereof.

In witness whereof, I have subscribed my name this day:  April 1, 2009.

_Judy Runes_

Judy Runes, RPR, CSR No. 5874

156

# United States District Court
## For the Southern District of California

| | |
|---|---|
| DEBORAH HOOPER, an individual, ) | Certified Copy |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. CV 07-1647 JAH (CAB) |
| ) | |
| COUNTY OF SAN DIEGO, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## DEPOSITION OF
### Kirk Terrell

Location:  1600 Pacific Highway, Room 355, San Diego, CA

Date:  Thursday, March 5, 2009; 1:38 p.m.

Reporter:  Judy Runes, Certified Shorthand Reporter, Certificate No. 5874

INSTANT COURT REPORTING, INC.
280 W. Sierra Madre Blvd., Suite 181
Sierra Madre, California 91024
1-800-498-0288

Terrill depo.

EXHIBIT C

```
 1                 APPEARANCES OF COUNSEL

 2   For the Plaintiff:

 3           Law Offices of Robert Mann and Donald Cook

 4           Donald Cook, Esq.

 5           3435 Wilshire Boulevard, Suite 2900

 6           Los Angeles, California  90010

 7

 8   For the Defendant:

 8

 9           County of San Diego

10           Office of County Counsel

11           Stephanie E. Kish, Esq.

12           Senior Deputy County Counsel

13           1600 Pacific Highway, Room 355

14           San Diego, California  92101-2469

15           (619) 531-6230 p    (619) 531-6005 f

16           stephanie.kish@sdcounty.ca.gov

17

18

19

20

21

22

23

24

25
                                                        2
```

**Terrill depo.**                          **-22-**                          **EXHIBIT C**

```
 1                    I N D E X

 2   Examination by:                           Page

 3   Mr. Cook....................................    4

 4

 5

 6

 7

 8

 9

10                    EXHIBITS

11   Identification        Description            Page

12   A - Basic Course Unit Guide                  159

13   B - Illustration                             161

14

15

16

17

18

19

20

21

22

23

24

25
```

| Examination by: | | Page |
| --- | --- | --- |
| Mr. Cook | | 4 |

| Identification | Description | Page |
| --- | --- | --- |
| A - Basic Course Unit Guide | | 159 |
| B - Illustration | | 161 |

3

```
 1                San Diego, California

 2           Thursday, March 5, 2009 - 1:38 p.m.

 3                  KIRK TERRELL,

 4            having been first duly sworn,

 5         was examined and testified as follows:

 6                  -EXAMINATION-

 7   BY MR. COOK:

 8        Q    State your name for the transcript, please.

 9        A    Kirk Terrell, T-e-r-r-e-l-l.

10        Q    My name is Donald Cook.  I represent the

11   plaintiff in this action.

12             Have you been deposed before?

13        A    No, I have not.

14        Q    If you do not understand a question, say so.

15   If you need to take a break, say so.  If you don't know

16   the answer to a question, then the correct answer is "I

17   don't know."  All right?

18        A    Yes, sir.

19        Q    Did you review anything in preparation for the

20   deposition today?

21        A    Yes, I did.

22        Q    What did you review?

23        A    My arrest report.

24        Q    That would be your arrest report regarding the

25   arrest of the plaintiff Deborah Hooper?
```

                                                            4

```
 1   coordinator at the hospital.

 2        Q    And what's the purpose of meeting with the K-9

 3   coordinator?

 4        A    I have to fill out some contact reports.

 5        Q    Did you fill out a contact report?

 6        A    Yes.

 7        Q    Other than filling out the contact report, is

 8   there any other reason for meeting with the K-9

 9   coordinator?

10        A    No.

11        Q    Who was the K-9 coordinator you met with?

12        A    Dan Settle.

13        Q    And did you tell Dan Settle what had occurred?

14        A    Yes.

15        Q    What was his rank?

16        A    He's a deputy.

17        Q    Does he have supervisory responsibilities?  I

18   mean, K-9 coordinator sounds like someone who might just

19   be coordinating activities.  That's why I ask.

20        A    Yeah, he has some supervisory

21   responsibilities.

22        Q    He has supervisory responsibilities over you;

23   is that true?

24        A    Yes.

25        Q    What are those supervisory responsibilities
```

                                                          184

**Terrill depo.**                    -25-                    **EXHIBIT C**

1   over you?

2        A    He was responsible for training.

3        Q    Did he indicate -- well, withdrawn.

4             You basically told him in so many words what

5   your dog had done, right, how your dog came to bite

6   Ms. Hooper; is that right?

7        A    I wrote a report for him.

8        Q    Well, had you written a report at the time

9   that you met with him at the hospital?

10        A    Yeah.  It was -- it was a contact report, I

11   believe, that I gave to him.

12        Q    Did he indicate to you in any manner that the

13   dog's behavior was not in accordance with the dog's

14   training?

15        A    No, not at all.

16        Q    His reaction to you is that, well, yeah, the

17   dog pretty much performed the way that he would have

18   expected the dog to have performed; is that true?

19        A    Well, he's pretty even-keeled.  I mean...

20        Q    Okay.  I mean, he gave you no indication that

21   the dog had acted outside of its training.  Would you

22   agree with that statement, Deputy?

23        A    I would agree with that statement.

24        Q    Now, was this a use of force, the dog biting

25   Ms. Hooper?

                                              185

**Terrill depo.**                **-26-**                **EXHIBIT C**

1      A    What do you mean?

2      Q    Well, I asked you if you recognized it.  You

3  said yes, you knew it was a basket muzzle, but you don't

4  carry it around in your patrol car.

5      A    No.  I have a different type of muzzle.

6      Q    What type of muzzle do you have?

7      A    I don't know, but it's not a basket.

8      Q    Can you describe the muzzle that you have?

9      A    Yeah.  It's more leather.

10     Q    Do you ever use a hard plastic muzzle with

11  your dog?

12     A    No, not hard plastic.

13     Q    Your use of force in this incident, including

14  the use of the dog when it bit Ms. Hooper, was in

15  accordance with your training; is that true?

16     A    Yes.

17     Q    And your use of force, including the dog

18  biting Ms. Hooper, was in accordance with sheriff's

19  department policy and procedure as you understand it; is

20  that correct, Deputy?

21     A    Yes.

22     Q    Is it also true that you heard nothing, seen

23  nothing from anybody within the department in the almost

24  three years since this incident happened suggesting that

25  your use of force in this incident, including the use of

212

```
 1    the dog, was contrary to sheriff's department policy?

 2              You've heard or seen nothing from the

 3    department to that effect; would you agree?

 4        A    I've heard or seen nothing about this

 5    incident, no.

 6        Q    How is the dog able to, if you know,

 7    distinguish you from someone else, you know, like with

 8    Ms. Hooper where you're having physical contact with

 9    literally grappling as the dog goes up to bite, in this

10    case, Ms. Hooper?

11              How is the dog able to distinguish, if you

12    know?

13        A    I don't know.

14        Q    Is there any training you take the dog through

15    to enable it to distinguish you from the attacker; that

16    is, where the attacker is having, you know, close

17    physical contact with you?

18        A    What do you mean?

19        Q    Well, in this incident you are lying on top of

20    Ms. Hooper.

21        A    Uh-huh.

22        Q    Your back is on her chest.

23        A    No, it's not.  My chest is on her back.

24        Q    I'm sorry.  Your chest is on her back.

25              What I'm saying is you have about as close
```

213

**Terrill depo.**                    **-28-**                    **EXHIBIT C**

```
1                    REPORTER'S CERTIFICATION

2

3          I, Judy Runes, RPR, CSR No. 5874, certify:

4          That the foregoing transcript of the

5   deposition of KIRK TERRELL was taken before me at the

6   time and place therein set forth, at which time the

7   witness was placed under oath by me;

8          That the testimony of KIRK TERRELL

9   and all objections made at the time of the deposition

10  were recorded stenographically by me and thereafter

11  transcribed;

12         That the foregoing transcript is a true record

13  of the testimony and of all objections made at the time

14  of the deposition;

15         That dismantling this transcript will void the

16  court reporter's official certification of this

17  transcript.

18         I further certify that I am neither counsel

19  for nor related to any party to said action, nor in any

20  way interested in the outcome thereof.

21         In witness whereof, I have subscribed my name

22  this day:  March 18, 2009.

23

24         _____

24         Judy Runes, RPR, CSR No. 5874

25
```