UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH HOOPER,<br><br>        Plaintiff,<br>v.<br>COUNTY OF SAN DIEGO; *et al.*,<br><br>        Defendants. | Civil No.07cv1647 JAH(KSC)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR NEW TRIAL**<br>**[DOC. # 164]** |

**INTRODUCTION**

Currently pending before this Court is the motion for new trial filed by plaintiff Deborah Hooper ("plaintiff"). The motion has been fully briefed. After a careful consideration of the record as a whole, and for the reasons set forth below, this Court GRANTS plaintiff's motion.

**BACKGROUND**

On May 9, 2006, plaintiff Deborah Hooper ("plaintiff") was bitten by a sheriff's canine while defendant Deputy Sheriff Kirk Terrell ("Terrell") attempted to arrest her for possession of methamphetamine and theft of retail merchandise. Plaintiff, on February 21, 2007, plead guilty and was convicted of petty theft, possession of a controlled substance, and resisting a peace officer. On May 21, 2009, this Court granted defendants' motion for summary judgment and dismissed plaintiff's excessive force claims against defendants Terrell and the County of San Diego as barred by Heck v. Humphrey, 512 U.S. 477 (1994), and dismissed plaintiff's claims against defendant Kolender in his

individual capacity.

Plaintiff appealed the Court's decision to the Ninth Circuit. On February 28, 2011, this Court spread the mandate of the Ninth Circuit filed January 4, 2011, in which the Court's ruling was reversed in regards to plaintiff's excessive force claim but affirmed as to the claims against defendant Kolender in his individual capacity. A new pretrial schedule was then set. On December 2, 2012, this Court granted defendants' motion for summary judgment as to plaintiff's claim based on liability pursuant to Monell v. New York City Department of Social Services, 436 U.S. 658 (1978).

At trial, plaintiff presented evidence supporting her allegations that defendant Terrell used excessive force during her arrest by stomping on her foot and employing a police dog to severely bite her. Plaintiff alleged that her foot was broken from the stomp by Terrell and that she received head injuries from the dog biting her head multiple times, which resulted in disfigurement due to the removal of a significant portion of her scalp. Defendants denied the allegations of stomping on plaintiff's foot. While defendants did not challenge the nature or extent of plaintiff's head injuries, defendants contended that 1) excessive force was not the cause of plaintiff's foot injury; 2) Terrell's deployment of the dog was reasonable force as plaintiff was attempting to remove Terrell's weapon from its holster during her resistance to the lawful arrest and 3) there were mitigation issues relating to plaintiff's damages concerning her head injuries. Both parties' experts opined that the deployment of the police dog would amount to a reasonable application of force if plaintiff attempted to remove Terrell's weapon.

After nine days of trial, the jury returned a defense verdict. Plaintiff timely filed the instant motion for new trial. Defendants timely filed an opposition to the motion. Plaintiff did not file a reply brief.

//
//
//
//

# DISCUSSION

## 1. Legal Standard

A new trial may be granted under Rule 59(a) of the Federal Rules of Civil Procedure "on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a)(1). Because Rule 59 does not instruct on the grounds upon which a motion for a new trial may be granted, the Court must look to the grounds historically recognized by the courts, including (1) the verdict is contrary to the clear weight of the evidence and (2) the trial was unfair for some other reason. Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007); Zhang v. Am. Gem Seafoodds, Inc., 339 F.3d 1020,1035 (9th Cir. (2002); Ray v. Volkswagen of America, 896 F.3d 1174, 1176 (9th Cir. 1990).

"A trial court may grant a new trial only if the jury's verdict is against the clear weight of the evidence, and may not grant it simply because the court would have arrived at a different verdict." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). In evaluating a motion for a new trial, the court need not "view the evidence from the prospective most favorable to the prevailing party." Landes Constr. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir. 1987). The Court is not required to draw all inferences in favor of the verdict and may review the evidence and make credibility determinations. Experience Hendrix L.L.C. v. hendrixlicensing.com Ltd., 762 F.3d 829, 845 (9th Cir. 2014) (citing Kode v. Carlson, 596 F.3d 608, 612 (9th Cir. 2010)). The Court is not limited to the grounds raised in support of the motion for new trial but may *sua sponte* raise its own concerns about the evidence and verdict. Id. (citing Fed.R.Civ.P. 59(d)). The Court should "set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." Molski, 481 F.3d at 729.

The Court balances two important considerations when determining whether to grant a motion for new trial: (1) the Court's power to set aside a jury's verdict; and (2)

respect for the "collective wisdom of the jury." <u>Landes</u>, 833 F.2d at 1371-72. Here, the Court must weigh the evidence, give "full respect to the jury's findings," and, if the Court finds it "is left with a definite and firm conviction that a mistake has been committed," this Court may grant a new trial. <u>Molski</u>, 471 F.3d at 729.

Being especially mindful of this legal standard, this Court proceeds with extreme caution in reviewing the evidence and considering "the collective wisdom of the jury, and the function entrusted to it in our system," in determining whether to accept the findings of the jury. <u>Landes</u>, 833 at 1371.

**2. Analysis**

Plaintiff seeks relief from the jury's verdict on the grounds that: (a) the jury erred as a matter of law when it failed to find the force Terrell used upon plaintiff's foot was excessive; and (b) the jury erred when it found plaintiff's head injuries were justified.[1]

**a. Plaintiff's Foot Injuries**

Plaintiff first contends that there was ample evidence demonstrating plaintiff suffered fractures of bones in her foot but there was no evidence establishing any justification permitting defendant Terrell to stomp on plaintiff's foot. Doc. # 164-1 at 2. Thus, plaintiff claims "the jury's failure to find that the force Terrell used against [plaintiff's] foot was excessive, was wrong as a matter of law." <u>Id.</u>

Defendants, in opposition, point out there was no evidence compelling a conclusion that Terrell intentionally stomped on plaintiff's foot. Doc. # 167 at 2. Defendants further point out that the only expert witness who testified regarding plaintiff's foot fractures opined "that many things could result in broken metatarsal bones." <u>Id.</u> Defendants explain that "[t]he jury heard no evidence that required them to find that the fractures were the result of an intentional stomp as opposed to an inadvertent step – or that the fractures did not occur during the parties' subsequent physical struggle when they

---

[1] Plaintiff also seeks a new trial on the grounds that the jury should not have been allowed to consider evidence concerning plaintiff's guilty plea to California Penal Code § 148 and methamphetamine consumption. While plaintiff's arguments of prejudicial error in this regard are not meritless, this Court need not decide them here in light of its ultimate ruling that a new trial should be granted.

were on the ground." Id. at 2-3. Defendants claim the jury could also have simply disregarded plaintiff's testimony regarding her foot fractures. Id. at 3.

This Court, after a careful review of the record, agrees with defendants. This Court's review failed to uncover evidence that clearly demonstrated plaintiff suffered foot fractures caused by Terrell "stomping" on her foot other than plaintiff's own testimony. Dr. Griglak opined that such fractures could have occurred in many ways, not solely by "stomping" on the foot. No other testimony was elicited to support plaintiff's testimony. Simply because the jury could have drawn a different inference or conclusion from the evidence is not a sufficient ground for a new trial. Tennant, 64 S.Ct. at 412. Therefore, the motion to grant a new trial is DENIED on this basis.

**b.   Plaintiff's Head Injuries**

Plaintiff also contends the jury's verdict regarding the justification for plaintiff's head injuries was against the great weight of the evidence, explaining the evidence demonstrated the defense's claim that plaintiff was reaching for and had actually grabbed Terrell's gun was physically impossible because plaintiff was never in a position where she could have physically grabbed the gun. Doc. # 164-1 at 2-3.

Defendants, in opposition, point out the evidence presented to the jury demonstrated plaintiff was in a position where she could have reached for Terrell's gun. Doc. # 167 at 3. Defendants explain that Jennifer Zabrowski testified plaintiff's right hand was not controlled by Terrell during the struggle, that she saw plaintiff reach behind her back such that her right arm and hand were "flailing" within inches of Terrell's gun holster, and that Terrell appeared to be trying to block or protect his holster from plaintiff. Id. Defendants further explain that Mario Baeza testified he saw plaintiff reach around and grab Terrell's gun.[2] Id. In addition, defendants point out Terrell testified plaintiff grabbed the weapon and defendants' police procedures expert, as well as plaintiff's expert, testified deploying the dog was reasonable if plaintiff attempted to take Terrell's gun. Id.

---

[2] The record does not confirm defendants' representation that it appeared to Zambrowski that Terrell was trying to block or to protect his holster.

1  Thus, defendants claim the clear weight of evidence supports the jury's verdict. Id. After
2  a careful review of the record, this Court disagrees with defendants.

3  This Court finds the clear weight of the evidence presented in this case does not
4  support the jury's verdict regarding Terrell's justification for deploying the dog. There was
5  substantial and compelling evidence presented that plaintiff did not reach for, grab and/or
6  hold Terrell's gun. This Court first notes plaintiff's witness, Joel Leguina, testified he
7  observed the interaction between plaintiff and Terrell beginning from when Terrell
8  searched plaintiff's car until after the dog biting. Leguina stated he was in a perfect
9  position to see "absolutely everything" that was occurring. Leguina testified that, after
10 plaintiff and Terrell went to the ground, plaintiff was on her stomach and Terrell was on
11 top of her with his knees straddling her. Even though Terrell ordered, repeatedly, for
12 plaintiff to stop resisting or he will call the dog, Leguina testified did not hear Terrell say
13 "let go of my gun," and testified he did not observe plaintiff holding or attempting to hold
14 Terrell's gun. Leguina testified that Terrell had removed himself from plaintiff's body by
15 the time the dog arrived and then stood 5 to 6 feet away during the biting incident.

16 This Court further notes that Leon Doyon, a defense witness with law-related
17 military security experience, testified he was 15 to 20 feet away and had a clear view of the
18 incident. Doyon stated he could see the right side of plaintiff's body but not her arms or
19 right hand. Doyon testified, however, that he could clearly see Terrell's holster or holstered
20 weapon. While Doyon testified that he could not see plaintiff's hand clearly during the
21 struggle, he stated he never saw plaintiff attempt to take, touch or grab Terrell's weapon
22 or saw her hand, wrist, forearm or elbow in the vicinity of the holster or weapon. Doyon
23 testified that he would have assisted Terrell if he had observed such a movement by
24 plaintiff. Doyon also testified he heard Terrell yell a number of times for plaintiff to stop
25 resisting or he would call the dog. In addition, defendants' witness Jennifer Zabrowski
26 testified that, after forcing plaintiff to her knees and then to her stomach on the ground,
27 Terrell was holding plaintiff's left hand with one knee in plaintiff's back. According to
28 Zabrowski, plaintiff's right hand was flailing behind her. Zabrowski testified she did not

see plaintiff trying to grab anything, but while Terrell tried to grab plaintiff's right hand, plaintiff moved her hand back in the direction of Terrell's right hip area, maybe a few inches away from the holster. Zabrowski further testified Terrell twice warned the crowd to step away from the police car and twice warned plaintiff to "stop resisting -- I will call my dog."

Defense witnesses Zabrowski's and Doyon's testimony contradicted Terrell's testimony in several material, pivotal respects. First, regarding Terrell's position on plaintiff during the altercation, Zabrowski testified that Terrell had one knee in plaintiff's back while holding plaintiff's left hand. Doyon testified that Terrell was positioned in a cross body manner, lying on and covering plaintiff's right shoulder, while plaintiff made push-up type movements. Second, neither Doyon nor Zabrowski heard Terrell say "let go of my gun" or otherwise warn plaintiff that he would call the dog if she did not stop reaching for his gun. Third, neither witness, who both claimed to be in a perfect position to observe the entire series of events, observed plaintiff attempt to grab or actually grab Terrell's weapon. In addition, both witnesses testified that Terrell removed himself from plaintiff as the dog approached to bite.

Defendants' remaining percipient witness was Mario Baeza, an individual who had attended the San Diego Police Academy in the 1980s and who, at the time of the incident, was the drug store's Loss Prevention Officer. Baez testified that plaintiff reached for and grabbed Terrell's weapon. However, his testimony 1) was contradicted by the clear weight of other defense eye witness testimony, along with plaintiff's evidence, 2) was impeached by his prior deposition testimony, 3) presented conflicting versions of events between his direct and cross examinations, and 4) was impeached by Terrell's testimony or contradicted Terrell's testimony in material ways. A number of examples follow.

- Baeza's testimony about plaintiff's cooperativeness and behavior in the loss prevention room varied between direct and cross-examination and was inconsistent with his prior deposition testimony and Terrell's testimony.

● Baeza testified that Terrell placed a small plastic bag which appeared to contain a white residue on top of the car before Terrell approached plaintiff to arrest her.

Terrell testified that he left the bag in the car under the passenger seat so as not to cause plaintiff to react to its discovery by attempting to run before he approached her.

● Baeza testified that during the initial struggle, Terrell put plaintiff in a headlock or choke hold and Terrell took plaintiff down to the ground. Baeza further testified that, while on the ground, Terrell had plaintiff in a choke hold or head lock with his left arm while he was also holding plaintiff's hair with his left hand and attempting to get plaintiff's right hand under control.[3]

Terrell testified he had no idea how he ended up on the ground and that he did not take plaintiff to the ground. Instead, Terrell testified plaintiff dropped to a crouched position (similar to a hockey drop) attempting to avoid arrest and he grabbed her hair to obtain control. Terrell testified plaintiff then went to the ground on her stomach and he ended up on top of her. And while on the ground, Terrell testified he grabbed plaintiff's left wrist to bring the arm behind her and attempted to obtain control of plaintiff's right hand.

● Baeza testified on direct examination that plaintiff grabbed Terrell's weapon and Terrell tried to protect the weapon from coming out. On cross-examination, Baeza testified that Terrell's hand was on the weapon or on plaintiff's hand pushing the gun back into the holster while plaintiff was

---

[3] As previously stated, Zabrowski testified Terrell forcefully took plaintiff to the ground.

1  grabbing the weapon and pulling it part way in and out of the holster. Baeza
2  further testified Terrell never took his right hand off of plaintiff's hand or the
3  gun while plaintiff's hand was on the gun. On re-direct examination, Baeza
4  stated Terrell attempted to retain his weapon by using his elbow as leverage
5  and his hand.  Baeza testified he knew that the use of the elbow to protect
6  the weapon was consistent with the training provided during his 1986 law
7  enforcement academy training.  On re-cross examination, Baeza testified
8  Terrell did not know if Terrell's elbow was on the handle of the gun but
9  observed Terrell tucking it next to his body.  Baeza testified at his deposition
10 regarding Terrell's use of his hand to protect the weapon but did not testify
11 as to Terrell's use of the elbow or forearm to protect the weapon. When
12 asked whether he had a clear recollection that Terrell used his elbow, Baeza
13 stated he had "somewhat of a recollection" Terrell used his elbow.

15 Terrell testified he never used his hand to keep the weapon seated in his
16 holster and stated he kept his fist near mid-line of his stomach and pressed
17 against plaintiff's hand with his elbow and forearm until plaintiff took her
18 hand off the weapon.

20 • Baeza testified Terrell's efforts to protect his gun with his right hand went
21 on for 4-5 minutes.

23 Terrell testified that, according to the Computer-Automated  Display or
24 CAD, approximately 45 seconds elapsed from the time he requested back up
25 while falling to the ground and the time a back up unit arrived.

27 • Baeza testified plaintiff continued to grab and hold the weapon after the
28 dog began biting her.

1  Terrell testified plaintiff released her grip on the weapon as soon as the dog
2  bit her.

4  ● Baeza testified Terrell called for assistance while the dog was biting
5  plaintiff and, at the same time, was grasping plaintiff's hand which was on
6  the weapon, using his full body weight to keep plaintiff down and holding
7  plaintiff in a head lock.

9  Terrell testified he began calling for assistance as he was falling to the ground
10 and completed the call while falling to the ground or after hitting the
11 ground.

13 ● Baeza testified that he did not speak to Terrell concerning anything other
14 than checking with Terrell to determine if he was okay after plaintiff's arrest,
15 which was inconsistent with his deposition testimony wherein he testified he
16 attended and spoke to Terrell prior to testifying at plaintiff's preliminary
17 hearing.

19 ● Baeza testified that prior to his testimony at the preliminary hearing,
20 which occurred over one year before his deposition, Terrell told him he
21 needed Baeza to say that plaintiff verbally consented to the search of her car.

23 In all, Baez's testimony was discredited by the testimony of Terrell, Dolon and
24 Zabrowski and/or discredited Terrell's testimony and was clearly against the weight of
25 other eye witness testimony.  Importantly, even if this Court considered in isolation the
26 testimony of Terrell, Zabrowski, Doyon and Baeza and the weight to be afforded all
27 testimony pursuant to the instructions provided to the jury, it does not demonstrate that
28 the clear weight of the evidence is that plaintiff grabbed or attempted to grab Terrell's

1  weapon and he warned plaintiff not to do so or he would summon his dog.

2  Next, defendants invite the court to consider plaintiff's testimony as "self serving" and to afford it little weight in this analysis. The record does not support accepting this invitation. As stated, the testimony of defense witnesses Doyon and Zabrowski, both having a clear view of all pertinent events, overwhelmingly corroborated plaintiff's testimony, as did plaintiff's witness Leguina, concerning her resistance, not grabbing or holding the weapon and not receiving a warning that the dog would be called if plaintiff did not stop grabbing the weapon. As such, the thread of consistency and corroboration running through the testimony of witnesses Leguina, Doyon, Zabrowski, Baeza, plaintiff and Terrell was that plaintiff vigorously resisted arrest.[4] Again, neither of the experts opined that vigorously resisting arrest would justify a law enforcement officer to proceed directly to the level of force associated with summoning the police dog.

The record before the Court does not present a case involving competing expert testimony, substantially aligning or corroborating evidence presented by one side that conflicted with substantially aligning or corroborating evidence presented by the other side, or the unsure recollections of multiple non-party eye witnesses. If either was the case, this Court would not be free to invade upon the collective wisdom of the jury. Keeping in mind the "collective wisdom of the jury" and the important function entrusted to it, Landes Constr. Co., 833 F.3d at 1371-72, this Court finds that the jury's verdict regarding plaintiff's head injuries was against the clear weight of the evidence. As such, this Court is "left with a definite and firm conviction that a mistake has been committed" by the jury. Molski, 481 F.3d at 729. Thus, this Court finds a new trial must be ordered.

//
//
//
//

---

[4] Notably, Terrell did not include in his incident report that plaintiff grabbed or attempted to grab his weapon.

## CONCLUSION AND ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for a new trial [doc. # 164] is **GRANTED;** and
2. A status conference will be conducted before this Court on **February 23, 2015 at11:30 a.m.** to schedule further proceedings in this case.

DATED: January 8, 2015

JOHN A. HOUSTON
United States District Judge