UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH HOOPER,<br><br>                       Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO; et al.,<br><br>                       Defendants. | Case No.: 3:07-cv-1647-JAH-KSC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT NOTWITHSTANDING THE VERDICT, OR IN THE ALTERNATIVE, A NEW TRIAL.**<br><br>ECF No. 494. |

## I.    INTRODUCTION

Presently before the Court is Plaintiff Deborah Hooper's ("Plaintiff") timely[1] filed Motion for Partial Judgment Notwithstanding the Verdict,[2] or in the Alternative, a New Trial. ("Mot.," ECF No. 494). Defendants County of San Diego and Deputy Sheriff Kirk

---

[1] A motion must be filed within 28 days of entry of final judgment. Fed. R. Civ. P. 50(b). Plaintiff brings this motion on November 30, 2021, and judgment was entered on November 2, 2021. ("Judgment," ECF No. 490).

[2] Although captioned as a Partial Judgment Notwithstanding the Verdict, "[e]ffective December 31, 1991, Rule 50 of the Federal Rules of Civil Procedure was amended[, and a] motion for a 'directed verdict' is redesignated as motion for 'judgment as a matter of law[ ]'." *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, n.2 (9th Cir. 1993).

Terrell ("Deputy Terrell" or "Defendant Terrell") (collectively, "Defendants") filed a Response in Opposition to Plaintiff's Motion, ("Opp'n," ECF No. 507), and Plaintiff filed a Reply in support of her motion, ("Reply," ECF No. 508).  Upon consideration of the moving papers and the applicable law, and for the reasons set forth below, the Court **DENIES** Plaintiff's Motion for Partial Judgment Notwithstanding the Verdict, or in the Alternative, a New Trial.

## II.    BACKGROUND

On the morning of May 9, 2006, Plaintiff consumed a small amount of methamphetamine and two malt beverages before going to Longs Drug Store at approximately 3:00 to 3:30 p.m.  While at the Longs Drugs, Plaintiff purchased approximately forty dollars' worth of items, but attempted to leave the store with items in her purse that were not paid for.  Plaintiff was subsequently detained by a Longs Drugs loss prevention officer, who then placed her in an office in the store and placed her in handcuffs.  Plaintiff testified that after approximately thirty minutes in the loss prevention office, Deputy Terrell arrived and began questioning her about the shoplifting.  Plaintiff agreed to let Deputy Terrell search her car.  Her handcuffs were removed while she walked with Deputy Terrell outside of the building to his patrol car first, then to her car, where Deputy Terrell found a scale he believed would test positive for methamphetamine.  Deputy Terrell grabbed Hooper's left wrist to place her under arrest, then she jerked her hand away.

Plaintiff and Deputy Terrell dispute what occurs next.  According to Plaintiff, Deputy Terrell then grabbed her shirt, and she felt his foot come down on top of her foot, in what is known as a heel strike.  Hooper testified that she went down to the ground positioned face down, and her shirt came off in the struggle.  Plaintiff recalls Deputy Terrell directed her to stop resisting once, with no other warning or repetition of that warning.  Hooper asserts that she initially had her hands above her head, but then Deputy Terrell got both of her hands behind her back one at a time just before he called the police canine.

Deputy Terrell testified that during this struggle, he grabbed Hooper's shirt before she drops out of it, leaving him holding her shirt with his right hand.  He drops it upon noticing she is not wearing the shirt.  Deputy Terrell testified that he did not conduct any take down maneuver via heel strike, or otherwise, as Hooper testified.  Deputy Terrell asserts that while on the ground, he had a hold of Hooper's left wrist but that she was resisting arrest and had her right hand on the handle of his gun, which was holstered on his right side.  Deputy Terrell testified that he gave Hooper multiple warnings to stop resisting, put her hands behind her back, get down on the ground, and warning her to let go of his gun.  Deputy Terrell also stated his head was inches from Hooper's head, such that he could see under his own car, when he called his canine.

The canine tore off large portions of Hooper's scalp, requiring a number of skin graft surgeries and resulting in permanent disfiguring scars.  According to Deputy Terrell, the dog bite lasted approximately five to ten seconds.

On February 21, 2007, Plaintiff pleaded guilty and was convicted of petty theft, possession of a controlled substance, and resisting a peace officer.  Plaintiff brought the instant action against Defendants alleging violations of 42 U.S.C. § 1983 under the Fourth Amendment, California Constitution, Article I § 13, and California's Tom Bane Civil Rights Act, pursuant to California Civil Code § 52.1(b).  (ECF No. 1).  The first trial was held from September 24 to October 4, 2018, after which the jury returned a unanimous verdict in favor of Defendants on all claims.  (ECF No. 156).  Plaintiff requested, and the Court granted a motion for a new trial.  (ECF Nos. 164, 169).  The next two consecutive trials resulted in mistrials.  (ECF Nos. 319, 386).  The Court conducted the fourth trial from September 28 to October 13, 2021.  (ECF Nos. 452, 483).

///
///
///
///
///

On October 9, 2021, Plaintiff orally moved for judgment as a matter of law pursuant to Rule 50(a),[3] arguing that (1) the evidence does not support a finding that there was a gun grab, and (2) the canine bite was both unnecessary and excessive in duration.  (ECF No. 504, 121:25-122:5).  The Court denied the motion, stating:

> AS TO THE FIRST POINT, A MOTION PURSUANT TO RULE 50 BASED UPON THE FACT THAT THE EVIDENCE DOES NOT SUPPORT THAT THERE WAS A GUN GRAB, THAT MOTION IS DENIED. DEPUTY TERRELL HAD A TOTALLY DIFFERENT VERSION TO PRESENT TO THE JURY. THE JURY HAS TO DECIDE THAT QUESTION AS TO WHETHER OR NOT THAT WAS THE CASE.
>
> NUMBER TWO, HAVING THE DOG CONTINUE TO BITE AFTER HE IS NO LONGER, AFTER THE DEPUTY IS NO LONGER IN DANGER, THERE'S WITNESS TESTIMONY SUGGESTING THAT THE DEPUTY HAD STOOD UP OR BACKED AWAY. THE PLAINTIFF TESTIFIED THAT SHE COULD NOT RESIST ANYMORE BECAUSE OF THE PAIN AND THE BITING AND SHE WAS MORE PROTECTIVE OF HER FACE AND SHE WAS NOT IN GEAR OF RESISTING AT THAT POINT; SHE HAD STOPPED RESISTING. DEFENDANT SAYS THAT SHE WAS. I THINK THAT'S A MATTER FOR THE JURY TOO. I THINK, AS A MATTER OF LAW, THE COURT CANNOT MAKE THAT FINDING. MOTION IS DENIED.

---

[3] Federal Rule of Civil Procedure 50(a)(1) provides:

> If a party has been heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

(ECF No. 504, 123:15-124:5).

On October 13, 2021, the jury returned a unanimous verdict in favor of Defendants. ("Special Verdict Form," ECF No. 488). In addition to finding Defendant Terrell did not violate Plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983 and the Tom Bane Civil Rights Act, the jury also answered the special verdict form as follows:

> (a) Plaintiff resisted Defendant Terrell's attempt to handcuff her after her arrest by jerking her hand or arm away from him?
> Yes.
>
> (b) Plaintiff grabbed or placed her hand on Defendant Terrell's gun?
> Yes.
>
> (c) Plaintiff continued to resist during the dog bite?
> Yes.
>
> (d) The dog continued to bite after Plaintiff stopped resisting?
> No.
>
> (e) The dog continued to bite Plaintiff after Plaintiff was no longer a threat to the safety of Defendant Terrell and/or the bystanders?
> No.

(Special Verdict Form at 2-3).

Plaintiff brings a renewed post-verdict request for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).

### III.   LEGAL STANDARD

**A.   Judgment as a Matter of Law**

Fed. R. Civ. P. 50(b) states that,

> if the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment – or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged – the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under

> Rule 59.  In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b)(1)-(3).

A judgment as a matter of law is proper when the evidence permits only one reasonable conclusion as to the verdict.  *Cockrum v. Whitney*, 479 F.2d 84, 85 (9th Cir. 1973).  In ruling on a motion for judgment as a matter of law, the trial judge cannot reweigh the evidence or consider the credibility of the witnesses.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Kay v. Cessna Aircraft Co.*, 548 F.2d 1370 (9th Cir. 1977).  Judgment as a matter of law is appropriate if the evidence and its inferences, considered as a whole and viewed in the light most favorable to the non-moving party can support the reasonable conclusion that the moving party is entitled to judgment notwithstanding the adverse verdict.  *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1151 (9th Cir. 1988).[4]

**B.    New Trial**

Pursuant to Federal Rule of Civil Procedure 59, a district "court may . . . grant a new trial on all or part of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"  Fed. R. Civ. P. 59(a)(1).  Because Rule 59 does not instruct on the grounds upon which a motion for a new trial may be granted, the Court must look to the grounds historically recognized by the courts including, but not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

"A trial court may grant a new trial only if the jury's verdict is against the clear weight of the evidence, and may not grant it simply because the court would have arrived

---

[4]    Internal quotations and citations omitted unless otherwise noted.

at a different verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).  In evaluating a motion for a new trial, the court need not "view the evidence from the perspective most favorable to the prevailing party." *Landes Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  The Court is not required to draw all inferences in favor of the verdict and may review the evidence and make credibility determinations. *Experience Hendrix L.L.C. v. hendrixlicensing.com Ltd.*, 762 F.3d 829, 845 (9th Cir. 2014) (citing *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010)).  The Court should "set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski*, 481 F.3d at 729.

## IV.   DISCUSSION

### A.   Judgment as a Matter of Law

Plaintiff sets forth two arguments in support of her argument that judgment be granted as a matter of law is appropriate.  First, relying on the trial testimony of canine expert Burton Quick, and percipient witnesses, Plaintiff argues that the initial canine attack was excessive force as a matter of law.  Plaintiff asserts that the witnesses "testified they saw Terrell trying to get Ms. Hooper's hands behind her back as if to handcuff her but Ms. Hooper would not cooperate. . . . [N]one saw Ms. Hooper grab Terrell's firearm or make any movement consistent with Terrell's [testimony]." (Mot. at 9).  Second, Plaintiff asserts that the duration of the canine bite was excessive as a matter of law.  (*Id.* at 12).  The Court will address each argument in turn.

#### 1.   Substantial Evidence Supports the Jury's Verdict

To determine whether Deputy Terrell's use of the police canine was an unconstitutional intrusion on Plaintiff's Fourth Amendment rights, the Court deploys an "objective reasonableness" standard.  *Graham v. Conner*, 490 U.S. 386, 388 (1989).  Objective reasonableness is determined "in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." *Id.* at 397.  The "reasonableness" of an officer's actions "must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). "In assessing the objective reasonableness of a particular use of force, we consider: (1) 'the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted,' (2) 'the government's interest in the use of force,' and (3) the balance between 'the gravity of the intrusion on the individual' and 'the government's need for that intrusion.' " *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (quoting *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017)).

The key issue at trial—and the most important factor in the Fourth Amendment analysis—is whether Plaintiff posed a threat to Defendant Terrell or any of the bystanders. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (citing *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011)). Plaintiff asserts that percipient witness testimony cannot be reconciled with Deputy Terrell's testimony that Plaintiff had her right arm along the right side of her body, with his forearm pressed against her hand placed on his weapon. Specifically, Plaintiff's principal argument is that of the percipient witness testimony, "none saw Ms. Hooper grab Terrell's firearm or make any movement consistent with Terrell's description of how Ms. Hooper supposedly had grabbed his firearm." (Mot. at 9). Defendants rebut, arguing that the circumstances of the Court's denial of Plaintiff's Rule 50(a) motion have not changed, and further, Plaintiff's counsel in fact "conceded that Deputy Terrell testified that plaintiff grabbed his gun; at that time he equated putting her hand on his gun to grabbing it[.]" (Opp'n at 6).

As Plaintiff notes, the witnesses did not testify they saw Hooper grab Terrell's firearm. However, Deputy Terrell testified that during the altercation, Plaintiff had her hand on his service weapon on his right side, and that he was under the belief that Hooper was attempting to pull his gun from his holster. (ECF No. 476 at 6:10-18). Plaintiff's contention that all of the percipient witness testimony contradicts Deputy Terrell's account is unpersuasive. In fact, on cross examination, Defense counsel elicited testimony from Jennifer Zabrowski, for example, that Deputy Terrell's right hip was away from where

Zabrowski was standing. (ECF No. 473 at 41:1-3). Then, when asked if Zabrowski observed Deputy Terrell "trying to block his right hip area where his holster was[,]" Zabrowski said, "Yes. His arm was going from trying to grab her right arm to going up to his hip to moving it back down to try to grab her arm. It would go back and forth." (*Id.* at 41:9-13). Joel Leguina similarly testified during cross examination that he could not see Deputy Terrell's gun at the time the dog was released, nor could he see Plaintiff's right hand. (ECF No. 474 at 30:15-20). Leon Doyon also testified that he saw Plaintiff's right arm, but did not clearly see her right hand. (ECF No. 371 at 25:3-8). The jury was tasked with determining the truthfulness and credibility of Hooper, Deputy Terrell and the percipient witnesses, and upon such an endeavor, resolved conflicting accounts in favor of Deputy Terrell. *Donoghue v. Orange Cnty.*, 848 F.2d 926, 933 (9th Cir. 1987) ("Credibility determinations are within the exclusive province of the jury.") (citing *Twin City Fire Ins. Co. v. Philadelphia Life Ins. Co.*, 795 F.2d 1417, 1423 (9th Cir. 1986). Plaintiff's motion for judgment as a matter of law attempts to retry the matter by arguing her version of events, and improperly asks this Court to reweigh the evidence and the credibility of the witness' testimony.[5] To that extent, Plaintiff's interpretation of the expert testimony of Burton Quick to the facts as Plaintiff presents them is inapposite.

Taking the evidence presented at trial in the light most favorable to Defendants, and drawing all reasonable inferences in their favor, substantial evidence was presented at trial to support the jury's conclusion that Defendant Terrell reasonably believed Plaintiff was grabbing or attempting to grab his gun, and therefore justifying the deployment of his

---

[5]   Plaintiff also argues that no percipient witnesses heard Deputy Terrell "say anything about his firearm or telling Ms. Hooper to let go of his firearm[.]" (Mot. at 9). On direct examination Plaintiff's counsel elicited testimony from Deputy Terrell that he yelled a number of times at Plaintiff to let go of his firearm. (ECF No. 476 at 12:19-23, 13:2-14:15). To the same effect, the percipient witnesses also did not hear or did not recall hearing Plaintiff yelling anything specific despite Hooper testifying that after the canine was pulled off of her, she "started screaming, 'somebody call Dixie' " a dozen times, while repeating a phone number. (ECF No. 30 at 2-6).

canine as reasonable force. *See Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017) ("Because this appeal comes after the jury's verdict, we must construe the facts in the light most favorable to the jury's verdict[.]"); *see also Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) ("Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."). In light of the evidence supporting the jury's verdict, Plaintiff's motion that the canine bite was excessive as a matter of law is **DENIED**.

        2.    The Duration of the Canine Bite

Defendant Terrell asserts, and Plaintiff disputes, that the canine bite lasted from five to ten seconds. Plaintiff relies on Deputy Terrell's testimony stating he did not instruct the canine to let go because he did not yet have control of Hooper. (Mot. at 13). Plaintiff contends that while she was protecting her face during the dog bite, her hand could not have been on Deputy Terrell's gun, and there was no longer justification for the level and duration of force inflicted.

Defendants contend that Plaintiff "unfairly waited until *after both sides rested* to argue that Deputy Terrell was independently liable because the dog did not stop biting immediately." (Opp'n at 12 (emphasis in original)). Defendants argue that if Plaintiff provided fair notice through the Complaint, Rule 26 disclosures, or eliciting expert testimony on the subject, Defendants would have been afforded an opportunity to also present expert testimony as to the duration of the bite. (*Id.*) Defendants also brought this objection to the Court's attention during the pendency of the trial while discussing jury interrogatories. (ECF No. 504 at 64:4-65:14). In oral argument and in her Reply, Plaintiff in essence argues that the excessive duration of the dog attack is implicit in her testimony, and the testimony of Deputy Terrell and Leon Doyon. (ECF No. 504 at 42:4-10).

Plaintiff's theory of liability for the duration of the canine bite is not alleged in Plaintiff's complaint. *See Sanders v. City of Pittsburg*, 14 F.4th 968, n. 2 (9th Cir. 2021)

(plaintiff's "complaint fails to allege any dog bite or continued dog bite after he was handcuffed . . . Because this specific contention was not raised in briefing or his complaint and the City and officers had no meaningful opportunity to respond to the new allegation, we treat this argument as waived."). Although Federal Rule of Civil Procedure 8 does not require a plaintiff to set out in detail the facts upon which he bases his claim, the Rule does require a short and plain statement of the claim. Fed. R. Civ. P. 8(a). Furthermore, Plaintiff also failed to supplement disclosures and/or discovery responses under Rule 26, thereby putting Defendants on notice about the expanded theory of liability that it intended to present at trial. This is particularly revealing in light of Plaintiff's own admission that the "duration of the bite was *always* an issue in this case." (Reply at 14 (emphasis in original)). This is further belied by the absence of any expert testimony as to the duration of the bite and the limited percipient witness testimony adduced supporting a theory of two distinct and discrete violations: one based on Defendant Terrell siccing the dog and the other based on the duration of the bite.  It is clear that the procedural defect to asserting this theory of liability has prevented a robust record on the matter, such that now it is too attenuated to the original theory and too distinct to not require prior notice. *Hartsell v. Cnty. of San Diego*, 802 Fed.Appx. 295, 296 (9th Cir. 2020) (citing *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) ("[W]e held more than twenty years ago that 'it was clearly established that excessive duration of [a canine] bite [or] improper encouragement of a continuation of [an] attack by officers could constitute excessive force that would be a constitutional violation.' "). Accordingly, Plaintiff's motion for judgment as a matter of law as to the duration of the bite is similarly **DENIED**.

B.  **New Trial**

Plaintiff seeks a new trial on grounds that (1) the verdict was against the clear weight of the evidence, and (2) the special verdict form was prejudicial error.

///

///

///

### 1. The Verdict Is Not Against the Clear Weight of the Evidence

Plaintiff argues that the jury's verdict was against the clear weight of the evidence because (1) all percipient witness testimony corroborates Hooper's version of events of her resisting arrest, but not attempting to gain control of Defendant Terrell's gun; (2) none of the witnesses heard Defendant Terrell command Hooper to let go of his gun; (3) Sergeant Yancey corroborated the percipient witnesses account as to the verbal commands; and (4) a lack of physical evidence, despite Defendant Terrell's testimony regarding his physical proximity to Hooper when he deployed his canine. (Mot. at 14-16).

As stated above, the jury heard testimony from percipient witnesses Jennifer Zabrowski and Joel Leguina stating that they were positioned on the left side of Plaintiff and Deputy Terrell, while his weapon was seated on his right side. (ECF No. 473 at 16:22-24; ECF No. 474 at 17:17-20). The jury also heard testimony from Zabrowski that she saw Hooper's arm go up towards Defendant Terrell's side, "and he was going back and forth between his side and going for her arm." (ECF No. 473 at 22:1-3). Doyon testified that he could not see Hooper's right hand, nor could he see whether she had her hand on his weapon. (ECF No. 371 at 25:3-8). Similarly, Joel Leguina testified that he could not see Deputy Terrell's gun at the time the dog was released, nor could he see Plaintiff's right hand. (ECF No. 474 at 30:15-20). The jury also heard testimony from Defendant Terrell maintaining his deployment of the canine was solely in response to Plaintiff grabbing or attempting to unseat his weapon. (*See e.g.*, ECF No. 476 at 4:15-25; ECF No. 479:26:6-9). The sum of this testimony provides the jury with sufficient evidence to believe Deputy Terrell's accounting of the incident.

Similarly unpersuasive is Plaintiff's argument that none of the witnesses heard Deputy Terrell command Hooper to let go of his gun. As previously mentioned, Plaintiff's counsel elicited testimony from Deputy Terrell that he yelled a number of times at Plaintiff to let go of his firearm, which the percipient witnesses do not corroborate. (ECF No. 476 at 12:19-23, 13:2-14:15). However, percipient witness Zabrowski also testified that she did not hear Deputy Terrell's commands other than "stop resisting," and both Zabrowski

and Leguina did not hear Plaintiff yelling the name, "Dixie" despite Hooper's own testimony that she "started screaming, 'somebody call Dixie' " a dozen times, while repeating a phone number after the canine was pulled off of her. (ECF No. 472 at 30:2-6; ECF No. 473 at 38:5-12; ECF No. 474 at 29:2-4).

The jury also heard testimony from Defendants' witness, Deputy James Stemper, who was a deputy sheriff at the time of the incident and responded to Defendant Terrell's code cover call. Stemper testified that he arrived under one minute of the call and upon arrival, he observed the canine biting Plaintiff while she was face down on the ground, with Defendant Terrell on top of her on his stomach. (ECF No. 505 at 18:9-16). Although Joel Leguina testified during trial that Deputy Terrell moved away from Plaintiff before the canine reached her, the jury also heard impeaching deposition testimony from Leguina stating he did not recall if Deputy Terrell moved back and away from Plaintiff before the canine engaged with Plaintiff. (ECF No. 474 at 32:25-33:19). The jury also saw evidence of blood on Deputy Terrell's sleeve from the day of the incident. The jury heard testimony from Defendant Terrell that this occurred while his right arm was on the ground during the altercation on the floor, and which could not have occurred if he was standing away from Hooper when the canine was deployed. (ECF No. 479 at 56:16-24).

Furthermore, there was testimony from use of force expert Elmer Pellegrino who testified regarding the importance of weapon retention, stating that any level of force is permissible if an officer reasonably believes there is an attempt to gain control of his weapon. (ECF No. 502 at 14:8-15). Pellegrino also testified that Deputy Terrell's decision to deploy his canine was reasonable based on these circumstances. (*Id*. at 15:5-9). The jury also heard from Jacob Pavlenko, a sheriff's canine handling procedures expert, who testified that it was acceptable to use a canine to prevent a suspect from getting control of an officer's gun. (ECF No. 500 at 14:22-25).

The jury ultimately concluded that Defendant Terrell did not use excessive or unreasonable force against Plaintiff. Considering the totality of the testimony and the evidence presented, the verdict was neither against the clear weight of the evidence nor a

miscarriage of justice.[6] *See Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 ("[A] decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases, the judge should accept the findings of the jury, regardless of his own doubts in the matter.") (citation omitted).

### 2. The Special Verdict Form Was Not Prejudicial Error[7]

Plaintiff asserts that the questions in the special verdict form, specifically questions 6(b) and (c), were irrelevant and unfairly prejudicial. As to question 6(b), Plaintiff takes issue with the phrasing of the question to include "or placed her hand" on the weapon, because it contradicts Deputy Terrell's own testimony that Plaintiff grabbed the gun. (Mot. at 16). Plaintiff objects to question 6(c) as improper "because the fact that Ms. Hooper resisted while the dog was ripping off her scalp cannot be used to justify the dog attack if she had never grabbed Terrell's firearm." (*Id.*)

Plaintiff's assertion that the wording of the special verdict forms caused confusion is not supported by the record. The Court gave clear directions in the jury instructions, which were read and provided to the jury, regarding the elements of the claims and what is properly considered in reaching their verdict. The jurors did not submit any questions nor was there any indication that they did not understand the law or their duties. *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 545 n.12 (9th Cir. 1991) ("[J]urors are presumed to follow the instructions given.") (citing *United States v. Escalante*, 637 F.2d 1197, 1202 (9th Cir. 1980)). Plaintiff's attempt to draw a distinction between "grabbing" or having "hands on" is unpersuasive in light of the Court's finding that "based upon the

---

[6] This case has been heard by a jury a remarkable four times. It strains credulity after such a protracted history to find the verdict goes against the clear weight of the evidence when two jury panels have found in favor of Defendants, and two trials resulted in a mistrial.

[7] These objections are properly before the Court. *Guy v. City. of San Diego*, 608 F.3d 582, 587 (9th Cir. 2010) ("[W]hen a party is complaining about the wording of the questions submitted to the jury, it must object to the form of special interrogatories in the trial court in order to preserve the issue for review on appeal.")

evidence, it didn't matter to the deputy whether she just touched it or grabbed it or whatever. She was after the gun and he was protecting the gun. That was the trigger." (ECF No. 504 at 89:14-17). Furthermore, Plaintiff's assertion that question 6(c) misrepresents Defendant Terrell's testimony is similarly without merit, as question 6(c) is reconcilable with question 6(e)[8], and the jury's finding of not liable on the § 1983 claim.[9]

## V.

## CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED Plaintiff's motion for judgment as a matter of law, or in the alternative, a new trial is **DENIED**.

**IT IS SO ORDERED.**

DATED:  March 27, 2024

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE

---

[8] The jury answered "no" to question 6(e), which reads, "The dog continued to bite Plaintiff after Plaintiff was no longer a threat to the safety of Defendant Terrell and/or the bystanders?"

[9] The Court found that the special interrogatories should be answered only if the jury finds liability against Deputy Terrell. (ECF No. 447 at 35:8-10). Nonetheless, the special verdict form instructed the jury to answer the interrogatories *regardless* of the verdict. Despite this oversight, the Court finds that the questions and the jury answering the questions was harmless. *See Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979, 985 n. 24 (9th Cir. 2002).